IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARITA GRIFFIN,<br><br>        Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant.<br>_____ / | No. 2:17-CV-0249-CMK<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 20).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 8, 2014. In the application, plaintiff claims that disability began on October 24, 2014. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 29, 2016, before Administrative Law Judge ("ALJ") Mary Beth O'Connor. In an August 11, 2016, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): obesity, chronic anemia, and migraines;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: she can perform light work; the claimant can stand and or walk two hours in an eight-hour workday; sit more than six hours in an eight-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; the claimant can occasionally balance, stoop, knee [sic], crouch, and crawl; she should avoid concentrated exposure to unprotected heights and moving mechanical parts; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work as a cashier and customer service representative.

After the Appeals Council declined review on December 1, 2016, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ failed to properly evaluate the medical opinions. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

/ / /

/ / /

/ / /

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Regarding the medical opinions, the ALJ stated:

> As for the opinion evidence, the State agency found claimant capable of lifting and carrying 20 pound [sic] occasionally, 10 pounds frequently; standing and walking two hours in an eight-hour workday; sit more than six hours on a sustained basis in an eight-hour workday; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. The undersigned afford [sic] great weight to this portion of the opinion, because it accounts for the claimant's severe impairments of obesity and anemia, and consistent [sic] with the longitudinal evidence. The undersigned affords little weight to the State

agency consultant's opinion that the claimant is limited to simple repetitive tasks for two hour increments as it is not supported by the longitudinal records. Thus, the undersigned afford [sic] partial weight to the opinion as a whole.

In April 2015, claimant attended an internal medicine consultative examination with Roger Wagner, M.D., who reported edema in the distal half of the left calf and the left foot with some slight darkish discoloration and minimal thickening of the skin consistent with venous congestion; however, the edema in the foot was essentially non-pitting. She was able to walk on toes and heels, had a negative Romberg test, and normal gait and station (Exhibit 8F/5). The examiner was of the opinion that the claimant could lift and carry 50 pounds occasionally, 25 pounds frequently with no postural, manipulative, or environmental limitations. The undersigned afford [sic] little weight to this opinion in light of the longitudinal evidence supports more limits [sic].

The claimant's treating physician, Jon D. Froyd, D.O., provided various medical source statements (Exhibits 14F; 15F; 20F; 22F). He indicated that the claimant cannot do "normal work duties," requires a dark environment, frequent rests, also limited claimant to sitting, standing, and walking one hour in an eight-hour workday, all similar in various opinions. The undersigned affords little weight to these opinion [sic] as the treatment notes and objective findings do not support these conclusions. Additionally, Dr. Froyd does not provide specific abilities and limits. The claimant's daily activities and statements contradict sitting, standing, and walking for a total of one hour. At the hearing, claimant testified she sits most of the day. The consultative examination also contradicts these opinions.

In December 2015, claimant's treating physician, Roxanne Fiscella, M.D., completed a State disability form certifying disability (Exhibit 16F/13-17). The undersigned affords little weight to this opinion as the criteria and evaluation of disability are different under the State Disability Program. Additionally, there are no details regarding claimant's abilities or limitations.

In April 2016, Dr. Fiscella completed a medical source statement (Exhibit 19F). She reported the claimant was able to lift and carry 10 pounds maximum about 2-3 hours over an 8 hour day; and sit, stand, and walk 15 minutes each, at a time. The undersigned affords little weight to this opinion, because there are minimal details regarding claimant's abilities and limitations, the treatment record do [sic] not support this conclusion, and the claimant had only a few visits with minimal findings. There are no objective finds [sic] to support back limitations and or limitations due to her thyroid problem. She is not compliant with taking her medication, anemia not acute during time Dr. Fiscella was treating her, and no objective findings were noted to support breathing problems. This opinion also is contradicted by the findings and opinion of the consultative examiner.

5

Claimant's treating physician Walailuk Chaiyarat, M.D., completed a medical source statement, in April 2016 (Exhibit 21F). Dr. Chaiyarat was of the opinion that the claimant could lift and carry a maximum of 10 pounds occasionally; and sit, stand, and walk a total of 20 minutes in an 8 hour workday. Little weight is given to this opinion, because there are minimal details regarding claimant [sic] abilities and limitations, treatment record do [sic] not support this conclusion, and had only a few visits with Dr. Chaiyarat with minimal findings. There is no objective evidence to support back restrictions, no indication that the claimant's thyroid is limiting, and claimant was not compliant with taking medications. Her activities of daily living and statements also contradict the limitation to sitting, standing, and walking 20 minutes total. And the consultative examiner contradicts this opinion.

Although claimant's mental health impairment was found nonsevere, the record contains a psychological consultative examination report from Philip M. Cushman, Ph.D. (Exhibit 12F). At the time, testing was performed demonstrating no specific memory deficits relative to her intellectual function. She was diagnosed with dysthymic disorder, early onset and borderline intellectual functioning with a global assessment of functioning score of 65 (footnote omitted), indicating some mild mental health symptoms. The examiner was of the opinion that the claimant would have difficulties performing any detailed or complex tasks in a work setting, but appeared capable of performing simple and repetitive tasks. She would have difficulties with regular attendance and consistent participation due to fatigue as well as childcare. She does not require special or additional supervision; capable of following simple verbal instructions from supervisors, but not complex instructions; capable of getting along with supervisors, coworkers, and the general public, and capable of dealing with the usual stressors encountered in a competitive work environment (Exhibit 12F/8-9). The undersigned affords little weight to this opinion due to the inappropriate consideration of fatigue and childcare. Additionally, the exam and the longitudinal evidence does not support the limitations of simple repetitive tasks.

The ALJ set forth the following regarding plaintiff's subjective complaints and testimony:

Claimant is a younger individual. She reported she has been unable to work due to thyroid cancer, anemia, migraines, left leg nerve damage, arthritis in both feet, high blood pressure, blood clots, obesity, hernia, and leukemia (Exhibit 2F/2). In a reconsideration appeal form, claimant reported her condition became worse, because she began to experience memory fog, continued migraines, anemia, and thyroid dysfunction (Exhibit 7E/2).

///

///

> The claimant testified that she has back and chest pain, swelling in her hands and feet, and anemia. She described pain in the lower left side of her back, causing her legs to tingle and numb. She testified to being tired and having migraines three or four days out of the week. She testified that she take [sic] ibuprofen or prescription medication for her migraines, which do not help. She stated her migraines affect her vision, causing blurry vision and floater [sic]. She testified she has constant chest pain from her congestive heart failure, but was only treated with blood pressure medication. She testified that she was prescribed a walker and uses a CPAP for her sleep apnea. The medical record establishes a diagnoses of severe anemia. She had some abnormal uterine bleeding and is status post hysterectomy in 2014. She has a history of a number of transfusions and history of intravenous iron infusions (Exhibit 18F).

Regarding activities of daily living, the ALJ stated:

> . . .[D]espite her impairments, the claimant has engaged in a somewhat normal level and range of daily activity and interaction. The claimant admitted activities of daily living included preparing meals, performing chores, chatting with people online, spending time with family, performing personal care tasks, and shopping. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. . . .

As to plaintiff's specific impairments, the ALJ described plaintiff's obesity, noting her weight and height of 319 pounds and 5'4", respectively. The ALJ noted that plaintiff "has been advised to attempt weight loss through improving her eating habits." See CAR at Exhibit 16F.[1] The ALJ also noted that the record establishes a history of frequent migraine headaches, see id. at Exhibits 13F, 14F, 16F, and 18F, but that a CT scan from 2015 was negative, see id. at Exhibit 13F, and added:

> . . .[T]he record shows establishes [sic] a history of frequent migraines; however, the migraines are treated with medication. She also reported having floaters in her eyes that affect her concentration, but there is only one reference to this in the record and examination reports documents her vision was fine (Exhibit 13F/1). Therefore, the medical evidence does not support this allegation.

/ / /

---

[1] Citations are to the Certified Administrative Record lodged on May 23, 2017 (Doc. 13).

With respect to anemia, the ALJ stated:

> The claimant's anemia has been evaluated under Listing 7.05. Her condition does not meet the clinical criteria of Listing 7.05, because the record does not demonstrate A) documented painful (vaso-occlusive) crises requiring parenteral (intravenous or intramuscular) narcotic medication occurring at least six times within a 12-month period with at least 30 days between crises OR B) complications of hemolytic anemia requiring at least three hospitalizations within a 12-month period and occurring at least 30 days apart, lasting at least 48 hours, including hours in a hospital emergency department or comprehensive sickle cell disease center immediately before the hospitalization OR C) hemoglobin measurements of 7.0 grams per deciliter (g/dL) or less, occurring at least three times within a 12-month period with at least 30 days between measurements OR D) beta thalassemia major requiring life-long RBC transfusions at least once every 6 weeks to maintain life.

As to leukemia, the ALJ stated:

> The claimant's leukemia does not meet Listing 13.06. The record shows claimant has a past history of myelogenous leukemia diagnosed and treated when she was 7 years old and has been in remission since then (Exhibit 3F/8).

Finally, the ALJ discussed plaintiff's alleged nerve damage:

> In terms of the claimant's alleged medical conditions, the record shows the claimant sought appropriate treatment. . . . Although she was referred to a neurologist (Exhibit 14F), the medical evidence fails to show ongoing treatment. She complained of neuropathy in the left leg and believed it secondary to the deep venous thrombosis; however, during a consultative examination, her sensation was intact. Additionally, claimant had a nerve conduction study, in April 2016, showing no evidence of specific lumbar radiculopathy (Exhibit 25F/2). She was prescribed the use of a walker in 2015 (Exhibit 24F), but there is no reference in the medical evidence that she uses any assistive devices. In fact, she was noted she was easily able to get up from her chair a waiting room [sic] and walk at a normal speed back to the exam without assistance (Exhibit 8F/5). The physical exam contradicts the need for a walker on a regular basis. Nevertheless, based on the claimant's severe impairment of obesity, the undersigned limited claimant to standing and or walking two hours in an eight-hour workday with occasional postural activities, but never climbing ladders ropes or scaffolds and should avoid concentrated exposure to unprotected heights and moving mechanical parts.

///

///

8

Plaintiff argues:

> In this case, the ALJ provided nearly identical generalized rejections for all of the treating physicians See Tr. 25. These non-specific findings failed to explain with facts from the record why this interpretation of the record was correct. . . .

Plaintiff also argues that the ALJ erred by rejecting various opinions as inconsistent with Dr. Wagner's opinion even though the ALJ afforded Dr. Wagner's opinion minimal weight.

### A. State Agency Doctors

On September 1, 2015, state agency consultative physician Tina Ward, M.D., offered her opinions regarding plaintiff's physical residual functional capacity. See CAR at Exhibit 5A. Plaintiff does not challenge the ALJ's reliance on Dr. Ward's opinions. Plaintiff also does not challenge the ALJ's rejection of the April 2015 opinion of consultative examining physician, Robert Wagner, M.D., who opined that plaintiff had greater physical capabilities than those found by the ALJ. See id. at Exhibit 8F. As to plaintiff's mental impairments – none of which were found to be severe – the ALJ rejected the opinion of state agency consultative psychologist Laura Lochner, Ph.D., who opined on October 20, 2015, that plaintiff is limited to simple repetitive tasks. See id. at Exhibit 5A. The ALJ also rejected the opinion of state agency consultative examining psychologist, Phillip Cushman, Ph.D., who opined that plaintiff is limited to simple repetitive tasks. See id. at Exhibit 12F. The ALJ found these opinion to be inconsistent with the longitudinal record.

Plaintiff argues that the ALJ's reference to inconsistency with the record as a reason for rejecting the opinions of Drs. Lochner and Cushman is insufficient because it is not accompanied by "citation or examples from the record showing any conflict." While the court notes that the ALJ's analysis of the medical opinions is followed by a discussion of the medical record, the court agrees with plaintiff that the ALJ erred by not explaining how any particular portion of the longitudinal record is inconsistent with the opinions expressed by Drs. Lochner and Cushman that plaintiff is limited to simple repetitive tasks. In this regard, the court is left to

9

guess which aspects of the longitudinal record the ALJ found to be inconsistent with the doctors' opinions.

A review of the ALJ's discussion of the medical record confirms this conclusion as none of the specific evidence cited by the ALJ seems to be inconsistent with a limitation to simple repetitive tasks. Specifically, with respect to activities of daily living, the ALJ noted that plaintiff is capable of "preparing meals, performing chores, chatting with people online, spending time with family, performing personal care tasks, and shopping." While, as the ALJ noted, "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," none of these daily activities necessarily indicates an ability to perform more than simple repetitive tasks in a work setting. In particular, all of the activities of daily living cited by the ALJ involve no more than simple repetitive tasks.

Though the court finds that the ALJ erred by not providing sufficient explanation to support rejecting the opinions of Drs. Lochner and Cushman that plaintiff is limited to simple repetitive tasks, the court agrees with defendant that the error is harmless. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.

/ / /

/ / /

/ / /

Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."

///

> Our specific holding in <u>Stout</u> does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

<u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted). Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

As defendant notes, the vocational expert in this case testified that plaintiff is capable of performing her past relevant work as a cashier, which is considered unskilled work. A person limited to simple repetitive tasks is capable of unskilled work. See 20 C.F.R. § 404.1568(a); see also <u>McGarrah v Colvin</u>, 650 Fed. App'x. 480, 481 (9th Cir. 2016) (unpublished). Because the ALJ's ultimate disability determination is not affected by the error with respect to Drs. Lochner and Cushman, the error is harmless.

**B.     Treating Doctors**

    1.     <u>Dr. Froyd</u>

The ALJ rejected Dr. Froyd's opinions that plaintiff cannot perform "normal work duties," that she can sit/stand/walk for only one hour, and that plaintiff requires frequent breaks and a dark environment. As to these opinions, the ALJ stated:

> . . . The undersigned affords little weight to these opinion [sic] as the treatment notes and objective findings do not support these conclusions. Additionally, Dr. Froyd does not provide specific abilities and limits. The claimant's daily activities and statements contradict sitting, standing, and walking for a total of one hour. At the hearing, claimant testified she sits

most of the day. The consultative examination also contradicts these opinions.

The court does not agree that the ALJ's citation to inconsistency with the longitudinal record is without explanation. Unlike the ALJ's discussion of the opinions of Drs. Lochner and Cushman, which failed to explain how those opinions were inconsistent with specific portions of the record, the ALJ notes that Dr. Froyd's opinion that plaintiff cannot sit for more than an hour is inconsistent with plaintiff's hearing testimony that she sits for most of the day. Additionally, the ALJ noted that Dr. Froyd's opinion is inconsistent with Dr. Wagner's findings.[2]

### 2. Drs. Fiscella and Chaiyarat

In April 2016, Dr. Fiscella opined that plaintiff could lift and carry a maximum of 10 pounds and that plaintiff could not sit/stand/walk for more than 15 minutes at a time. See CAR at Exhibit 19F. Also in April 2016, Dr. Chaiyarat opined that plaintiff can lift and carry a maximum of 10 pounds and that plaintiff can sit/stand/walk for only 20 minutes at a time. See id. at Exhibit 21F. The ALJ rejected these opinions because they are not supported by sparse and unremarkable treatment records and they are inconsistent with Dr. Wagner's opinions. The ALJ also noted that the opinions are inconsistent with plaintiff's non-compliance with medication.

As with the ALJ's analysis of Dr. Froyd's opinions, and in contrast to the ALJ's analysis of the opinions of Drs. Lochner and Cushman, the ALJ's reference to inconsistency with the longitudinal record is accompanied by specific examples of inconsistency. The ALJ noted that plaintiff's treatment with these providers was infrequent and that the objective findings noted by them were unremarkable. The ALJ also noted that the opinions were inconsistent with

---

[2] Plaintiff argues that the ALJ erred by referencing Dr. Wagner's opinion even though the ALJ gave little weight to that opinion. The court does not agree. The ALJ's reference to Dr. Wagner's opinion does not suggest that the ALJ found the opinion to be persuasive. Rather, the ALJ merely noted an additional inconsistency in the record with the opinion offered by Dr. Froyd.

Dr. Wagner's opinion. Moreover, plaintiff's non-compliance with medication is an indication that her impairments do not result in the extreme limitations opined by Drs. Fiscella and Chaiyarat. The court also observes that, as with Dr. Froyd's opinion that plaintiff cannot sit for more than an hour, the opinions of Drs. Fiscella and Chaiyarat that plaintiff cannot sit/stand/walk for more than 15 or 20 minutes at a time is inconsistent with plaintiff's hearing testimony.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.     Plaintiff's motion for summary judgment (Doc. 18) is denied;

    2.     Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

    3.     The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 27, 2018

                                                   **CRAIG M. KELLISON**
                                                   UNITED STATES MAGISTRATE JUDGE